**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ADALBERTO JONATHAN CASTRO,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LOUIS FOLINO, et al.** | : | **NO.  10-2568** |
| **Respondents.** | : | |

**REPORT AND RECOMMENDATION**

**LYNNE A. SITARSKI**                                                                 **DATE: January 30, 2013**
**UNITED STATES MAGISTRATE JUDGE**


Pending before this Court is a *pro se* petition for writ of habeas corpus, filed pursuant to

28 U.S.C. § 2254, by Adalberto Jonathan Castro ("Petitioner"), an individual currently

incarcerated in State Correctional Institution Greene located in Waynesburg, Pennsylvania.  For

the following reasons, this Court respectfully recommends that the petition be **DENIED**.


I.        **FACTS AND PROCEDURAL HISTORY**

The Superior Court of Pennsylvania provided the following recitation of the facts:

> In August, 2003, the Schuylkill Valley Emergency Medical Service
> was summoned to the Blue Marsh Lake area of Bucks County.
> Upon arrival, the paramedics found Rolando Dalmau ("victim"),
> conscious on the side of the road, suffering from gunshot wounds
> to the head.  He was taken to Reading Hospital.  Trooper
> Whitmoyer of the Pennsylvania State Police commenced an
> investigation of this matter on the same day.
>
> Approximately two weeks later, Trooper Whitmoyer visited the
> victim in the hospital and presented him with a photo lineup.  The
> victim identified [Petitioner] as the person who had shot him.  A
> few weeks later, [Petitioner] was arrested in Reading, Pennsylvania
> for a New York State parole violation.  Pennsylvania State Trooper

Hess contacted the New York authorities and informed them that [Petitioner] was in custody. Two New York detectives drove to Reading, where they met with Trooper Whitmoyer, Trooper Hess and Detective Cabrera of the Reading Police Department.

[Petitioner] was taken from his holding cell and placed in a large conference room. At approximately 7:30 in the evening, one of the New York detectives, Detective D'Alessio, spoke with [Petitioner] and asked him whether he was willing to talk. [Petitioner] agreed to speak with him, at which time Detective D'Alessio read [Petitioner] his Miranda rights. [Petitioner] signed an acknowledgment and understanding of those rights. The detective proceeded to interview [Petitioner] about a New York homicide case as well as the Pennsylvania case concerning the victim's shooting ("Blue Marsh case"). [Petitioner] refused to talk about the Blue Marsh case. Between ten and eleven that evening, [Petitioner] confessed, in a written statement, to the New York homicide. During the interview, [Petitioner] was handcuffed but not shackled to any object. He was given food and drink, and was permitted to use the bathroom and to smoke. He was also given a coat when he complained of being cold.

Following the confession, the New York detectives left the conference room. Shortly thereafter, the troopers and Detective D'Alessio re-entered the conference room to interview [Petitioner] again. Detective D'Alessio reminded [Petitioner] of his Miranda rights and explained that he could still opt to exercise them. [Petitioner] then agreed to talk about the Blue Marsh case, and he denied any involvement. This interview continued for approximately two hours, during which two breaks were taken so that [Petitioner] could use the restroom. After the second break, only New York Detectives D'Alessio and Porteus questioned [Petitioner]. At this time [Petitioner] admitted to shooting the victim of the Blue Marsh case, and asked to speak with the troopers. The troopers asked [Petitioner] to put his confession in written form, and he agreed. [Petitioner] was re-Mirandized prior to placing the confession on paper.

*Commonwealth v. Castro*, No. 1138 MDA 2004, at 1-3 (Pa. Super. May 19, 2005).

On September 3, 2003, a complaint was filed in the Pennsylvania case, charging Petitioner with criminal attempt to commit murder of the first degree, two counts of aggravated assault, and reckless endangering another person. *See Commonwealth v. Castro*, No. 03-4973, 1 (Berks Ct. Cm. Pl. Oct. 12, 2004). On or around November 13, 2003, Petitioner filed a counseled omnibus pretrial motion seeking, among other things, the suppression of statements made to the police during questioning.[1] *Id.* The trial court conducted a three-part pretrial hearing on February 24 and 25, 2004 and April 5, 2004. *Id.* On June 25, 2004, the trial court denied Petitioner's suppression motion. *See* Findings of Fact and Conclusions of Law in Disposition of Def.'s Omnibus Pretrial Mot., June 25, 2004. On July 15, 2004, a jury convicted Petitioner of criminal attempt to commit murder of the first degree, aggravated assault, and recklessly endangering another person. *See Commonwealth v. Castro*, No. 1581 MDA 2008 (Pa. Super. July 29, 2009). The Honorable Jeffrey K. Sprecher of the Court of Common Pleas of Berks County sentenced Petitioner to a term of 20 years to 40 years incarceration. *Id.*

On July 20, 2004, Petitioner filed a timely notice of appeal to the Pennsylvania Superior Court and, on August 3, 2004, a counseled Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) raising the following claims:[2]

(1)     The trial court erred in:
        (a)     Denying Petitioner's pretrial motion to suppress his statements, when the statements were not voluntarily given and were the result of promises and inducements to [Petitioner] by law enforcement officials;
        (b)     Failing to grant the request for a mistrial when the assistant district attorney violated the court's order, granted in response to a defense motion

_____

[1] Petitioner was represented by attorney Richard A. Joyce during pretrial motions and throughout the initial trial.

[2] Petitioner was represented by attorney Jeanne Trivellini during direct appeal.

3

in limine, that there be no mention to the jury of a pending homicide
investigation involving [Petitioner]; and

(c)      Instructing the jury regarding flight after a criminal offense, when the
alleged flight occurred some two weeks after the charge offenses.

*See* Pet'r's Statement of Matters Complained of on Appeal ¶¶ 1-3.  On October 12, 2004, the

trial court filed a memorandum opinion, denying relief.  *See Commonwealth v. Castro*, No. 03-

4973 (Berks Ct. Com. Pl. Oct. 12, 2004).  On May 19, 2005, the Superior Court affirmed

Petitioner's judgment of sentence.  *See Commonwealth v. Castro*, No. 1581 MDA 2008, at 1-2

(Pa. Super. July 29, 2009).  Thereafter, on November 10, 2005, the Supreme Court of

Pennsylvania denied Petitioner's timely petition for allowance of appeal.  *Id*. at 2.

On June 21, 2006, Petitioner filed a *pro se* petition pursuant to Pennsylvania's Post

Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §9541 *et seq.*[3], raising the following claims:

(1)      Ineffective Assistance of Trial Counsel by:
      (a)      Failing to object to Exhibit #12 Miranda form;
      (b)      Prejudicing Petitioner during opening and closing statements by stating:
            "He shot him, because he owed him $700.  However, Dalmau was found

---

[3]  Pennsylvania and federal courts employ the prisoner mailbox rule.  *See Perry v. Diguglielmo*, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (*citing Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. 1998)); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).  Under this doctrine, a prisoner's *pro se* petition is deemed filed when delivered to prison officials for mailing.  *See Burns*, 134 F.3d at 113; *Commonwealth v. Castro*, 766 A.2d 1283, 1287 (Pa. Super. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).  It is a prisoner's burden to prove that the doctrine applies by providing evidence for when the petition was placed within a prison mailbox or delivered to prison officials.  *See Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997); *Thomas v. Elash*, 781 A.2d 170, 176 (Pa. Super. 2001); *see also Council v. Nash*, 400 Fed. Appx. 680, 682 (3d Cir. 2010) (holding that it is appellant's burden to prove that the prisoner mailbox rule applies in a civil rights case).  Petitioner signed this petition and the attached letter reads June 21, 2006; this is the date it is deemed to have been filed.  *See* Pet'r's *Pro Se* PCRA Pet.

Petitioner has filed multiple documents *pro se* in this matter; Petitioner signed and dated each of these documents.  We will, of course, apply the prisoner mailbox rule to all such submissions, and deem them filed on the date that each was signed and dated.

to have cash on him and as Mr. Kurland indicated, a substantial quantity of cocaine, something that has value, has a currency, certainly in Mr. Dalmau's world, and, unfortunately, probably in Mr. Castro's world as well. He's no angel.";

(c)   Failing to object to mention of an "unrelated case" having no relation to the Pennsylvania case;

(d)   Failing to investigate or hire an expert to investigate the discovery of forensic evidence discovered and turned into State Troopers;

(e)   Failing to object to reference to the New York incident even after the jury was instructed to disregard any New York matter; and

(f)   Failing to object to questions of jurors during voir dire in a separate room and not in presence of Petitioner.

(2)   Prosecutorial misconduct by:

(a)   Introducing Petitioner's statements about the Pennsylvania case in violation of Fifth Amendment rights.

*See* Pet'r's *Pro Se* PCRA Pet. at 3. On July 3, 2006, the PCRA court appointed Gail Chiodo as PCRA counsel for Petitioner. *See* Order Granting Mot. for Appointment of Counsel, July 3, 2006. However, on July 3, 2007, the PCRA court ordered Gail Chiodo to withdraw and Lara Glenn Hoffert was appointed as Petitioner's PCRA counsel. *See* Pet. to Withdraw as Counsel and for an Extension to File Amended PCRA Pet. or "No-Merit", July 3, 2007. On July 30, 2007, after multiple extensions [4], a *pro se* amended PCRA petition was filed asserting the following claims:

(1)   The trial court erred in:

(a)   Failing to suppress Petitioner's statements made to New York Detectives and Pennsylvania State Troopers in violation of Fifth Amendment;

(2)   Ineffective Assistance of Counsel by:

(a)   Direct appeal counsel (Richard Joyce) for failing to raise Petitioner's invocation of Fifth Amendment right to remain silent as grounds for relief during Omnibus pre-trial motion;

---

[4] Petitioner was granted extensions to file an Amended PCRA petition on: August 14, 2006; November 3, 2006; January 16, 2007; July 3, 2007; and June 20, 2007. *See* Pennsylvania Docket, No. CP-06-CR-0004973-2003.

<blockquote>

(b)     Presence of conflict of interest;

(c)     Failing to object to evidence of pre-trial and trial transcripts; and

(d)     Failing to assert a favorable decision for Petitioner that was decided two months prior to trial.

</blockquote>

*See* Pet'r's *Pro Se* Am. PCRA Pet. at 2.  On August 9, 2007, Petitioner filed an addendum to the

*pro se* amended PCRA petition asserting the following additional claims:

<blockquote>

(1)     The trial court erred in:

    (a)     Failing to recognize Petitioner's invocation of Fifth Amendment privilege against self incrimination to law enforcement officials;

    (b)     Failing to find that law enforcement officials did not 'scrupulously honor' Petitioner's decision to remain silent;

(2)     Ineffective Assistance of Counsel by:

    (a)     Failing to raise potential conflict of interest of prior trial counsel and PCRA counsel (who are both members of the Berks County Public Defender's office);

    (b)     Failing to raise and/or argue Petitioner's invocation of his "right to silence" on omnibus pretrial motion; and

    (c)     Failing to raise and/or argue favorable decision passed prior to trial (*U.S. v. Rambo*, 365 F.3d 906, (10th Cir. 2004)).

</blockquote>

*See* Pet'r's *Pro Se* Am. PCRA Addendum.  On January 3, 2008, the PCRA court ordered Lara

Glenn Hoffert to withdraw and Allen Daringer was appointed as Petitioner's PCRA counsel.  *See*

Order Granting Mot. for Appointment of PCRA Counsel, Jan. 3, 2008.  On June 13, 2008, after

several more extensions,[5] Petitioner filed a counseled amended PCRA petition, asserting the

following claims:

<blockquote>

(1)     Ineffective Assistance of Trial Counsel by:

    (a)     Failing to suppress statements obtained from detectives who reinitiated questioning after Petitioner invoked his right to remain silent in violation of his Pennsylvania Constitutional and United States Constitutional rights;

</blockquote>

---

[5]  Petitioner was granted extensions to file an Amended PCRA petition on: September 13, 2007; November 20, 2007; January 22, 2008; and April 2, 2008.  *See* Pennsylvania Docket, No. CP-06-CR-0004973-2003.

(b)     Failing to object to exhibit #12 (Miranda Rights form) because it was a product of a New York statement and had no references to Pennsylvania case;

(c)     Failing to object to conducting *voir dire* with jurors in a separate room without the Petitioner present;

(d)     Failing to object to counsel's opening statement and closing argument stating "[Petitioner] shot him because he owed him $700; however, Dalmau was found to have cash on him as Mr. Kurland indicated a substantial quantity of cocaine, something that has value, has a currency, certainly in Dalmau's world, and, unfortunately, probably in Mr. Castro's world as well. He's no angel.";

(e)     Failing to object to the mention of an "unrelated hom - - case" which has no relevance to Petitioner's Pennsylvania case;

(f)     Failing to investigate or hire an expert to investigate the discovery of forensic evidence discovered and turned into state troopers;

(g)     Mentioning the New York matter after the court gave a cautionary instruction to the jury to disregard it;

(h)     Failing to object to prosecutorial misconduct that occurred when Petitioner's statement was admitted as the Commonwealth's evidence after it was learned that Petitioner's constitutional rights under the Fifth Amendment were violated; and

(i)     Failing to object to the trial court giving a jury instruction concerning the flight of Petitioner.

*See* Pet'r's Counseled Am. PCRA Pet.; Pet'r's Counseled Mem. of Law in Supp. of Am. PCRA Pet. On June 20, 2008, the PCRA court filed an order pursuant to Pennsylvania Rule of Criminal Procedure 907, notifying Petitioner of its intent to dismiss the motion for Post Conviction Collateral Relief, and stating its review had revealed no genuine issues concerning any material fact. *See Commonwealth v. Castro*, No. CP-06-CR-4973-2003 (Berks Ct. Com. Pl. June 20, 2008). On August 4, 2008, the PCRA court dismissed Petitioner's PCRA petition. *See Commonwealth v. Castro*, No. CP-06-CR-4973-2003 (Berks Ct. Com. Pl. Aug. 4, 2008).

On August 15, 2008, Petitioner filed a timely notice of appeal to the Superior Court of Pennsylvania. On September 9, 2008, in compliance with Pennsylvania Superior Court Rule of

Appellate Procedure 1925(b), Petitioner filed a counseled Concise Statement of Errors

Complained of on Appeal asserting the following claims:

(1) Trial court error by not granting a hearing on ineffective assistance of counsel and/or not finding that trial counsel provided ineffective assistance of counsel by:

    (a) Failing to suppress statements obtained from detectives, who reinitiated questioning after Petitioner invoked his right to remain silent, in violation of Pennsylvania and United States Constitutional rights;

    (b) Failing to object to exhibit #12 (Miranda Rights form) because it was a product of a New York statement and had no references to the Pennsylvania case;

    (c) Failing to object to conducting *voir dire* with jurors in a separate room without the defendant present;

    (d) Failing to object to counsel's opening statement and closing argument stating "[Petitioner] shot him because he owed him $700; however, Dalmau was found to have cash on him as Mr. Kurland indicated a substantial quantity of cocaine, something that has value, has a currency, certainly in Dalmau's world, and, unfortunately, probably in Mr. Castro's world as well. He's no angel.";

    (e) Failing to object to the mention of an "unrelated hom - -case" which has no relevance to Petitioner's Pennsylvania case;

    (f) Failing to investigate or hire an expert to investigate the discovery of forensic evidence discovered and turned into state troopers;

    (g) Mentioning the New York matter after the court gave a cautionary instruction to the jury to disregard it; and

    (h) Failing to object to the trial court giving a jury instruction concerning the flight of defendant.

*See* Pet'r's Counseled Statement of Errors Complained of on Appeal.

On September 11, 2008, the PCRA court filed a memorandum opinion recommending the

Superior Court deny Petitioner's appeal and affirm his sentence, stating that the issues raised by

Petitioner were identical to those raised in his original PCRA motion. *See Commonwealth v.*

*Castro*, No. CP-06-CR-4973-2003, 3 (Berks Ct. Com. Pl. Sept. 11, 2008). Further, the PCRA

court stated many of the underlying issues were previously addressed by the Superior Court on

Petitioner's direct appeal. *Id.* at 4. On July 29, 2009, the Superior Court affirmed the PCRA

8

court's determination that Petitioner's PCRA petition was meritless and that there existed no issues of fact requiring an evidentiary hearing. *See Commonwealth v. Castro*, No. 1581 MDA 2008 (Pa. Super. July 29, 2009). On March 9, 2010, the Pennsylvania Supreme Court denied Petitioner's allowance of appeal. *See Commonwealth v. Castro*, 640 MAL 2009 (Pa. Mar. 9, 2010).

On May 24, 2010, Petitioner filed the instant *pro se* habeas petition pursuant to 28 U.S.C. § 2254, asserting the following claims:

(1)    The trial court erred in denying a pretrial motion to suppress Petitioner's statements made to law enforcement officials by:
- (a)    Failing to suppress Petitioner's statements that were a product of a coercive environment;
- (b)    Failing to find that the Miranda warnings had gone stale during the protracted interrogation;

(2)    Ineffective assistance of counsel by:
- (a)    Failing to seek the suppression of statements in omnibus pre-trial motion and in trial;
- (b)    Failing to object to the admission of exhibit #12, a New York Miranda rights form; and
- (c)    Failing to object to Prosecutor's mention of an "unrelated hom - -case".

Pet'r's *Pro Se* Habeas Pet. On January 23, 2012, Respondent filed a response to Petitioner's *pro se* habeas petition, asking that it be denied with prejudice and without a hearing. (Doc. No. 8).

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") grants to persons in state or federal custody the right to file a petition in a federal court seeking the issuance of a writ of habeas corpus. *See* 28 U.S.C. § 2254. The AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Woodford v.*

*Viscotti*, 537 U.S. 19, 24 (2002); *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (*citing Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may be granted only if: (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts*, 228 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in *Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (*citing Williams*, 529 U.S. at 389-390). The Court in *Williams* further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 235 (*citing Williams*, 529 U.S. at 388-389). "In further delineating the 'unreasonable application of'

component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." *Werts*, 228 F.3d at 196 (*citing Williams*, 529 U.S. at 389).

## III.    DISCUSSION

### A.    2254(d) Review of Petitioner's Claim of Trial Court Error for Failure to Suppress Statements Made to Law Enforcement Officials [6]

Petitioner argues that the trial court erred in failing to suppress statements made to law enforcement officials in violation of the Fifth Amendments privilege against self-incrimination which resulted from a coercive environment, and additionally, that his *Miranda* warnings had become stale prior to his confession.  Respondents contend that this claim fails because Petitioner's confession was voluntary as defined under the applicable precedent.  Upon review, this Court finds that the state court's refusal to suppress Petitioner's statements did not violate his rights under the Fifth Amendment, and thus was not contrary to, or an unreasonable application of, clearly established federal law.

The Fifth Amendment of the United States Constitution provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination to the states.  *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964).  The prosecution may not

---

[6]  The Court will analyze Petitioner's claims (1)(a), and (1)(b) separately below.

use statements stemming from a custodial interrogation unless procedural safeguards are used to protect the privilege against self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Prior to any questioning, the individual must be informed that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *Id*. A party may waive these rights, provided the waiver is made voluntarily, knowingly, and intelligently. *Id.* Absent a voluntary waiver of these rights, a confession taken during a custodial interrogation violates the privilege against self-incrimination. *See Thompson v. Keohane*, 516 U.S. 99 (1995).

### 1. Voluntariness of Petitioner's Confession (claim (1)(a))

Petitioner asserts in claim (1)(a) the trial court erred in failing to suppress Petitioner's statements that were a product of a coercive environment. There are two elements to consider when evaluating whether the waiver of *Miranda's* protections was voluntary: first, a suspect's waiver must be voluntary in the sense that it is the "product of an essentially free and unconstrained choice by its maker . . . " *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994). Second, the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 2010 U.S. LEXIS 4379, 130 S.Ct. 2250, 2260 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). To determine if a confession was voluntary and whether a party has knowingly waived his or her rights, the Supreme Court requires consideration of "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *See Dickerson v. United States,* 530 U.S. 428, 434 (2000); *see also Robinson v. Vaughn*, 2003 WL 22271645, *9-10 (E.D. Pa. Oct. 1, 2003).

The Supreme Court has held a statement or confession is involuntary when the suspect's "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). However, a lack of evidence regarding an officer's use of coercive tactics similarly impacts a voluntariness analysis. *See U.S. v. Savage*, 2012 WL 5881852, *6 (E.D. Pa. Nov. 20, 2012) (finding a voluntary waiver where there was no evidence or allegations of physical coercion or threats by interrogating law enforcement officials); *United States v. Naranjo*, 229 F. App'x 167, 170 (3d Cir. 2007); *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005) ("A necessary predicate to a finding of involuntariness is coercive police activity.").

The ultimate issue of voluntariness is a legal question requiring an independent federal determination. *See Lam v. Kelchner*, 304 F.3d 256 (3d Cir. Pa. 2002) (*citing Miller v. Fenton*, 474 U.S. 104, 110 (1985)). Determinations of factual issues by state courts, such as whether police used intimidation tactics, are given a presumption of correctness, which may be rebutted by clear and convincing evidence to the contrary. *See Miller*, 474 U.S. at 112 (a state court's findings on subsidiary questions in determining voluntariness of a confession are conclusive on habeas review absent clear and convincing evidence to the contrary). Thus, this Court must examine the facts surrounding Petitioner's confession in order to determine if the state court's holding was contrary to, or an unreasonable application of, clearly established federal law.

On Petitioner's direct appeal, the Superior Court provided the following account of the circumstances regarding Petitioner's confession:

> [Petitioner] was taken from his holding cell and placed in a large conference room. At approximately 7:30 in the evening, one of the New York detectives, Detective D'Alessio, spoke with [Petitioner] and asked

him whether he was willing to talk. [Petitioner] agreed to speak with him, at which time Detective D'Alessio read [Petitioner] his Miranda rights. [Petitioner] signed an acknowledgment and understanding of those rights. The detective proceeded to interview [Petitioner] about a New York homicide case as well as the Pennsylvania case concerning the victim's shooting ("Blue Marsh case"). [Petitioner] refused to talk about the Blue Marsh case. Between ten and eleven that evening, [Petitioner] confessed, in a written statement, to the New York homicide. During the interview, [Petitioner] was handcuffed but not shackled to any object. He was given food and drink, and was permitted to use the bathroom and to smoke. He was also given a coat when he complained of being cold.

Following the confession, the New York detectives left the conference room. Shortly thereafter, the troopers and Detective D'Alessio re-entered the conference room to interview [Petitioner] again. Detective D'Alessio reminded [Petitioner] of his Miranda rights and explained that he could still opt to exercise them. [Petitioner] then agreed to talk about the Blue Marsh case, and he denied any involvement. This interview continued for approximately two hours, during which two breaks were taken so that [Petitioner] could use the restroom. After the second break, only New York Detectives D'Alessio and Porteus questioned [Petitioner]. At this time [Petitioner] admitted to shooting the victim of the Blue Marsh case, and asked to speak with the troopers. The troopers asked [Petitioner] to put his confession in written form, and he agreed. By this time it was approaching one o'clock in the morning. [Petitioner] was re-Mirandized prior to placing the confession on paper ... [Petitioner] alleges that after he disclosed the fact that he did not want to "do time" in Pennsylvania but preferred to return to New York, Detective Porteus promised that he would speak with the New York District Attorney about bringing him back to New York in exchange for cooperation in the Blue Marsh case.

*Commonwealth v. Castro*, No. 1138 MDA 2004, 2-5 (Pa. Super. May 19, 2005). In determining the voluntariness of Petitioner's confession, the Superior Court looked to the "totality of the circumstances". *Id*. at 5. The court explained that a promise made by law enforcement officers in exchange for the accused's cooperation may render a confession involuntary where the official promises benefits or special consideration. *Id*. However, the Superior Court determined the "promise" alleged by the Petitioner in no way implied leniency in prosecution. *Id*. Specifically,

the court noted that Detective Porteus stated that he would speak to the District Attorney about Petitioner's return to New York, not about the charges that would be brought in the course of the New York prosecution. *Id.* The Superior Court determined the contested statement did no more than suggest that Detective Porteus would check with the New York District Attorney about getting Petitioner to New York quickly. *Id.*

Upon review, it cannot be said that the Superior Court's findings were contrary to, or an unreasonable application of, clearly established federal law. In accordance with clearly established federal law, the Superior Court examined the totality of the circumstances in determining that Petitioner's confession was voluntary. Petitioner frames Detective Porteus' statement regarding the possible move to New York as a concrete promise. However, the surrounding circumstances must be taken into account. "[T]he proper inquiry asks whether, under the totality of the circumstances, the statement induced the confession, not whether it was, on its face, a promise." *See Miller v. Fenton*, 796 F.2d 598, 609 at n.10 (3d Cir. 1986). Here, Petitioner had already confessed to committing a homicide in New York. Thus, it necessarily follows that he would be taken back to New York in police custody regardless of his statement about the Blue Marsh case. There is no evidence to support a suggestion that Detective Porteus' statements concerning Petitioner's return to New York somehow induced his confession in the Blue Marsh case.

Additionally, the facts show that Petitioner's treatment while law enforcement officials conducted the interrogation was reasonable and did not present an intimidating or coercive environment. *See United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005) ("A necessary predicate to a finding of involuntariness is coercive police activity."). Petitioner was kept in the

same location, given food, drink, and opportunities to smoke and use the restroom over approximately a four hour period, during which there were multiple breaks in questioning. Petitioner has not provided clear and convincing evidence that his "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). Indeed, Petitioner makes no allegation of an intimidating or coercive environment at all, asserting only that Detective Porteus' alleged promise was the reason behind his confession. However, as examined above, Detective Porteus' statement was not a promise and therefore cannot be considered clear and convincing evidence of coercion. Thus, the Superior Court's finding that Petitioner's confession was not a product of coercion, and therefore voluntary, was in accordance with clearly established federal law.

## 2. Stale Miranda Warnings (claim (1)(b))

Petitioner next claims that his warnings against self-incrimination given pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) became stale during the protracted length of interrogation. While the Supreme Court has not squarely addressed the issue, other federal courts have considered "whether a time lapse renders *Miranda* warnings "stale" by asking two questions: (1) At the time the Miranda warnings were provided, did the defendant know and understand his rights? (2) Did anything occur between the warnings and the statement, whether the passage of time or other intervening event, which rendered the defendant unable to consider fully and properly the effect of an exercise or waiver of those rights before making a statement to law enforcement officers?" *U.S. v. Vasquez*, 889 F.Supp. 171, 177 (M.D. Pa. 1995); *see also U.S. v. Pruden*, 398 F.3d 241, 247 (3d Cir. Del. 2005).

Here, the Superior Court's determination on direct appeal was not contrary to clearly established federal law. The court looked to similar factors in determining whether initial warnings were stale and repeated warnings were necessary, including: "[t]he length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether the statements obtained are materially different from other statements that may have been made at the time of the warnings." *Commonwealth v. Castro*, No. 1138 MDA 2004, 6 (Pa. Super. May 19, 2005) (*citing Commonwealth v. Dupre*, 866 A.2d 1089, 1107 (Pa. Super. Jan. 11, 2005)). Using these factors, the Superior Court determined the interrogation of Petitioner was continuous in nature so that the *Miranda* warnings initially given were not stale at the time of the confession to the Blue Marsh crime. *Id*. The court pointed to the following facts in support of their decision:

> "[A]pproximately four hours passed between the warnings and the challenged confession; the warnings were given in the same room in which the entire interrogation took place; [Petitioner] did not leave this room except to use the restroom; and the same detectives who gave the Miranda warnings continuously questioned [Petitioner] about the Blue Marsh case throughout the night."

*Id.*

Additionally, the Superior Court's determination was a reasonable application of clearly established federal law. In the instant petition, Petitioner states only that his "Miranda warnings grew stale due to the protracted interrogation." *See* Pet'r's *Pro Se* Habeas Pet. at 6. It is true that a period of roughly four hours passed between the original *Miranda* warnings and the Blue Marsh statements, but the passage of time, on its own, is not determinative of whether the warnings needed to be reissued. Indeed, other federal courts have held that even longer periods

17

of time have not rendered the initial *Miranda* warnings invalid. *See Pruden*, 398 F.3d 241, 247

(3d Cir. 2005) (holding *Miranda* warnings effective after a delay of roughly twenty hours); *Guam*

*v. Dela Pena*, 72 F.3d 767, 769-70 (9th Cir. 1995) (holding a period of 15 hours did not render

initial *Miranda* warnings ineffective); *U.S. v. Rodriguez-Preciado*, 399 F.3d 1118, 1128 (9th Cir.

2005) (stating it was not necessary for defendant to be advised of his *Miranda* rights again after

an approximate sixteen hour interval).

Upon review, this Court agrees that Petitioner had been properly advised of his *Miranda*

rights and acknowledged, both orally and in writing, that he understood his rights. Petitioner has

failed to provide clear and convincing evidence contrary to the Superior Court's determination

that no intervening event caused the rights to become stale. Petitioner merely relies on the

passage of four hours, arguing that this interval rendered him unable to consider the effect of his

waiver before making statements to law enforcement officials. Petitioner's assertion that he

notified both sets of detectives of his desire to not speak about the Blue Marsh case is not

sufficient to rebut the court's finding. As more thoroughly examined above, Petitioner was not

subjected to a coercive environment designed to induce a confession. He was made aware of his

*Miranda* rights on multiple occasions, and voluntarily chose to speak about the Blue Marsh case

to detectives. Petitioner's rights had not become stale under *Miranda* and his confession was not

in violation of the Fifth Amendment's privilege against self-incrimination. Thus, the state

court's finding that Petitioner's Miranda warnings had not grown stale was not contrary to, nor

an unreasonable application of, clearly established federal law.

**B.     Ineffective Assistance of Counsel Claims**

Petitioner next claims his trial counsel was ineffective for failing to seek the suppression of statements in omnibus pre-trial motions and during trial, for failure to object to the admission of exhibit #12, a New York Miranda rights form, and for failure to object to the Prosecutor's mention of an "unrelated hom - - case". *See* Pet'r's *Pro Se* Habeas Pet. Respondents contend the underlying claims are without merit and should fail because Petitioner has not demonstrated that trial counsel was deficient in his performance, nor has Petitioner demonstrated prejudice resulting from his trial counsel's actions. (Doc. No. 8).

Petitioner's ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

694. Assessing prejudice using *Strickland* as been further defined as a question of "whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695; *see also Harrington v. Richter*, 131 S. Ct. 770, 791-92 (2011) (citation omitted). However, the "[l]ikelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792 (citations omitted).

"It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391. Thus, Petitioner is entitled to relief if the Pennsylvania courts' rejection of his claims was either "contrary to, or involved an unreasonable application of," that established law. *See id.* As the Supreme Court recently stated, though, establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is no easy task. *Premo v. Moore*, __U.S.__, 131 S. Ct. 733, 739-40 (2011). Because the *Strickland* standard and § 2254 are "both highly deferential, … when the two apply in tandem, review is 'doubly' so." *Id.* at 740 (citations omitted). On habeas review, the court should not ask whether counsel's actions were reasonable. *Id.* Rather, the habeas court should ask whether there is any reasonable basis to support the conclusion that counsel satisfied *Strickland*'s deferential standard. *Id.*

The state court addressed claims (2)(a), (2)(b) and (2)(c), using the Pennsylvania court's three-pronged test for deciding ineffective assistance of counsel claims. To prevail on a claim that counsel was constitutionally ineffective, a Petitioner must demonstrate: (1) that his underlying claim is of arguable merit; (2) that the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) that but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the

proceedings would have been different.  *See Commonwealth v. Malloy*, 856 A.2d 767 (Pa. 2004).

The Third Circuit has held that the Pennsylvania ineffectiveness test is not "contrary to" the

Supreme Court's *Strickland* standard.  *See Werts*, 228 F.3d at 204.  Thus, the PCRA court's

application of the Pennsylvania three-pronged test was not contrary to clearly established federal

law.

This Court will address each of Petitioner's ineffective assistance of counsel claims

separately to determine if the state court "unreasonably applied" the clearly established

*Strickland* standard. [7]

### 1. Ineffective Assistance of Counsel for Failing to Seek Suppression of Statements in Omnibus Pre-trial Motion and in Trial (claim (2)(a))

Petitioner claims his trial counsel failed to seek the suppression of his statements in

omnibus pretrial motions and during trial, in light of law enforcement officials' failure to

scrupulously honor his right to remain silent.  *See* Pet'r's *Pro Se* Habeas Pet. 8.  Respondents

contend that Petitioner's suppression claim is without merit because it was raised and litigated

before the trial court by trial counsel, and appealed fully through the state appellate courts.  (Doc.

No. 8 at 7-8).

Petitioner first raised this claim in his amended PCRA petition.  *See* Pet'r's Am. PCRA

Pet. at 3.  After reviewing the claim, the PCRA court issued an order of intent to dismiss

pursuant to P.R.C.P. 907, stating the claim was without merit.  *See Commonwealth v. Castro*,

_____

[7]  The Supreme Court has instructed that the "contrary to" and "unreasonable application"
clauses in 28 U.S.C. § 2254(d)(1) should be viewed independently.  *See Williams v. Taylor*, 529
U.S. 362, 404-05 (2000).  As noted above, the Pennsylvania test is not "contrary to" the
*Strickland* standard.  *See Werts,* 228 F.3d at 204.  Thus, unless specifically noted, each claim has
satisfied the "contrary to" clause and the Court will proceed by analyzing each claim's
compliance with the "unreasonable application" clause.

No. CP-06-CR-4973-2003 (Berks Ct. Com. Pl. June 20, 2008). The PCRA court held that trial counsel had tried, albeit unsuccessfully, to suppress Petitioner's confession. *Id.* The court stated Petitioner's trial counsel had attempted to suppress the confession through an omnibus pretrial motion, asserting the oral and written statements were made to police representatives without voluntarily, knowingly and intelligently waiving his Constitutional rights. *See* Omnibus Pretrial Mot. for Relief ¶¶ 11-22. However, the trial court denied Petitioner's motion, finding "[Petitioner's] right to remain silent and right to counsel were explained to him, and [Petitioner] knowingly and voluntarily waived those rights." *See* Findings of Fact and Conclusions of Law in Disposition of Def.'s Omnibus Pretrial Mot., June 25, 2004, 7. Petitioner then appealed to the Superior Court, which affirmed the trial court's conclusions, rejecting the claim without a hearing.[8] Petitioner has not presented any additional evidence on this point.

_____

[8] Petitioner raised a corollary, but nearly identical claim in his PCRA appeal to the Superior Court stating:

> "The trial court erred in not granting a hearing on ineffective assistance of counsel and/or not finding that trial counsel provided ineffective assistance of counsel when trial counsel failed to suppress statements obtained from detectives, who reinitiated questioning after defendant invoked his right to remain silent, in violation of his Pennsylvania Constitutional and United States Constitutional rights."

*See Commonwealth v. Castro*, No. 1581 MDA 2008, 2 (Pa. Super. July 29, 2009).

The Superior Court stated it agreed with the trial court's holding that Petitioner's argument had no merit as Petitioner's arguments were corollaries of both: (1) the claims that trial counsel raised when challenging the waiver of the right to silence; and (2) the claims the Superior Court considered on direct appeal when it had concluded the initial Miranda warnings were effective at the time of Petitioner's confession. *Id*. at 7. Thus, the Superior Court decided the underlying claims had been previously litigated, and no evidence was presented to support a finding that the trial court erred in rejecting the initial PCRA claims. *Id*.

Additionally, the Superior Court stated that it found no support in the record for

Here, Petitioner again raises a claim involving the suppression of statements made to law enforcement officials. While this claim is grounded in an ineffective assistance of counsel argument, the underlying claim is essentially identical to Petitioner's previously addressed claims (1)(a) and (1)(b). Said another way, for Petitioner's ineffective assistance claim to succeed, the underlying claim, asserting his statements were involuntary, must have merit. As explored more fully above in Section A and A(1), Petitioner's statements were determined to have been voluntary, and therefore, this claim is meritless. Addressing the underlying claim on direct appeal, the Superior Court reviewed the trial court's determination on the merits, finding that Petitioner's statement was voluntary and no error had been made in the trial court's analysis. *See Commonwealth v. Castro*, No. 1138 MDA 2004, 5 (Pa. Super. May 19, 2005). Therefore, because it was properly determined on the merits that Petitioner's statements were voluntary, it does not follow that trial counsel could be ineffective for failing to seek the suppression of those statements. Petitioner's counsel cannot be deemed ineffective for failing to raise a meritless claim. *Werts*, 228 F.3d 178, 203. Additionally, Petitioner's claim would fail under the performance prong of the *Strickland* standard because his trial counsel did in fact undertake the allegedly omitted action. *See Strickland*, 466 U.S. at 687 (1984); *see also Ferguson v. United States*, 2012 U.S. Dist. LEXIS 157341, *29 (W.D. Pa. Nov. 2, 2012) (holding Petitioner's claim for ineffective assistance of counsel fails under the first prong of *Strickland* because his attorney's performance was not deficient).

---

Petitioner's claims that the Pennsylvania state troopers or the New York detectives failed to "scrupulously honor" his refusal to discuss the attempted murder, or that the admission at trial of Exhibit 12, the initial waiver of rights form, was erroneous or prejudicial. *Id.* at n.4.

This Court finds that the trial court did not unreasonably apply the *Strickland* standard to the facts of this case. Accordingly, this Court recommends that Petitioner's claim (2)(a) be denied.

**2.    Ineffective Assistance of Counsel for Failing to Object to the Admission of Exhibit #12, a New York Miranda Rights Form (claim 2(b))**

Petitioner next claims his trial counsel was ineffective for failing to object to the admission into evidence of a New York *Miranda* rights form. *See* Pet'r's *Pro Se* Habeas Pet. 8. Petitioner asserts that trial counsel should have objected to the admission of this document because the written waiver pertained only to the New York homicide investigation, and not the shooting in the Blue Marsh case. *Id.* Respondents contend that Petitioner's claim must fail because the issue *was* raised by trial counsel, appealed fully through the state appellate courts, and determined to have no merit. (Doc. No. 8 at 7-8).

Petitioner first raised this claim in his *pro se* PCRA petition. *See* Pet'r's Am. PCRA Pet. at 3. However, as more thoroughly examined above, the PCRA court found trial counsel to have attempted, though unsuccessfully, to suppress Petitioner's statements regarding the Blue Marsh case. *See Commonwealth v. Castro*, No. CP-06-CR-4973-2003 (Berks Ct. Com. Pl. June 20, 2008). The PCRA court deemed the entire confession, including statements made about the New York homicide and the Blue Marsh shooting, to have been voluntary. *Id.* Therefore, Petitioner's claim must again fail under the performance prong of the *Strickland* standard because his trial counsel did in fact attempt to suppress Petitioner's statements that followed the signing of the *Miranda* rights form. *See Strickland*, 466 U.S. at 687 (1984).

This Court finds that the trial court did not unreasonably apply the *Strickland* standard to the facts of this case. Accordingly, this Court recommends that Petitioner's claim (2)(b) be denied.

### 3. Ineffective Assistance of Counsel for Failing to Object to Prosecutor's Mention of an "unrelated hom - - case" (claim (2)(c))

Petitioner next argues that his trial counsel was ineffective for failing to object to prosecutor's mention of an unrelated case during trial that could have prejudiced the jury and thus necessitated a mistrial. Respondents contend the claim must fail because Petitioner has failed to demonstrate how he was prejudiced by trial counsel's failure to object to this mis-speak. Petitioner originally raised a corollary to this claim on direct appeal, alleging that the trial court erred in denying his motion for mistrial. *See Commonwealth v. Castro*, No. 1138 MDA 2004, 7 (Pa. Super. May 19, 2005). In finding the trial court had not abused its discretion by denying the motion for a mistrial, the Superior Court explained the facts surrounding the alleged misconduct:

> "[The] motion was made after the Commonwealth allegedly breached a pre-trial ruling prohibiting it from mentioning that the case about which the New York Police sought to question [Petitioner] was a homicide. During his examination of Detective D'Alessio, the prosecutor stated, "Sir, pursuant to the investigation of an unrelated hom - - case in New York, did you have an occasion to visit the Reading area on August 30, 2003?" N.T. 7/13/04 at 125. Thereafter, counsel for [Petitioner] moved for a mistrial, arguing that his statement prejudiced the jury so as to rob [Petitioner] of a fair and impartial trial. The trial court denied this motion, but provided a curative instruction to the jury, in which it instructed that the jury must not consider the New York investigation in any way during its deliberations." [9]

---

[9] The curative instruction provided:

"The Court: Members of the jury, regarding this New York matter, New York investigation, you're directed not to consider any such matter or investigation that may or may not have occurred regarding New York. That's not only not before you for consideration, but it would be grossly unfair for you to speculate, to guess

*Id*. at 6-7.  Petitioner first raised the instant claim in his amended PCRA petition, alleging trial counsel was ineffective for failing to object to the prosecutorial misconduct,  which occurred when the Commonwealth uttered a statement regarding the unrelated New York case.  *See* Pet'r's Am. PCRA Pet. at 9.  The PCRA court found the issue to be without merit, agreeing with the Superior Court's finding on direct appeal finding that the "virtual" misstatement did not prejudice Petitioner, so as to deny him a fair trial.  *Commonwealth v. Castro*, No. CP-06-CR-4973-2003, 6 (Berks Ct. Com. Pl. June 20, 2008).  On PCRA appeal, the Superior Court again found no basis for disturbing the trial court's ruling that the claim of ineffectiveness should be dismissed without an evidentiary hearing.  *See Commonwealth v. Castro*, No. 1581 MDA 2008, 10 (Pa. Super. July 29, 2009).

Prosecutorial misconduct may warrant federal habeas relief if the prosecutor's acts "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987).  In order to constitute a due process violation, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a trial.'" *United States v. Bagley*, 473 U.S. 667, 676 (1985) (*quoting United States v. Agurs*, 427 U.S. 97, 106 (1976)).  It is not sufficient to prove that the prosecutors remarks were "undesirable or inappropriate," *Lesko v. Lehman*, 925 F.2d 1527 (3d Cir. 1991) or even "universally condemned," *Todaro v. Fulcomer*, 944 F.2d 1079 (3d Cir. 1991).  The Petitioner must show that he was denied a fair trial.  *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

---

what that matter might have been about.  Therefore, in your deliberations, you should disregard entirely what you may or may not believe or conclude or guess that was all about."

N/T 7/13/04 at 303.

In evaluating whether a prosecutor's misconduct rose to the level of a constitutional violation, a federal habeas court must examine the conduct in the context of the whole trial. *Greer*, 483 U.S. at 765-66; *see also Reid v. Beard*, 420 Fed. Appx. 156, 159 (3d Cir. 2011) ("A reviewing court must 'examine the prosecutor's offensive actions ... [by] assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant'") *(quoting Moore v. Morton*, 255 F.3d 95, 105 (3d Cir. 2001)). Further, "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11-12 (1985). Ultimately, the conduct complained of must be sufficiently prejudicial in the context of the entire trial to violate a petitioner's due process rights. *See Donnelly v. DeChrisoforo*, 416 U.S. 637, 639 (1974).

Upon review, this Court finds Petitioner was not prejudiced by the actions of his trial counsel so as to violate the *Strickland* standard. Petitioner has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. The state court held, both on direct appeal and through full PCRA review, that the prosecutor's statements, when considered with the curative jury instructions, did not amount to the type of prejudice which would have "infected the trial with unfairness as to make the resulting conviction a denial of due process." *Greer*, 483 U.S. at 765. The prosecutor was able to stop himself before the word "homicide" was fully uttered, and it would be pure speculation to presume that this caused the jury to have any bias towards Petitioner. Additionally, Petitioner's claim again fails under the performance prong of the

*Strickland* standard because a motion for mistrial was in fact made by his trial counsel. *See Strickland*, 466 U.S. at 687 (1984).

This Court finds that the state court did not unreasonably apply the *Strickland* standard to the facts of this case. Accordingly, this Court recommends that Petitioner's claim (2)(c) be denied.


**IV.     CONCLUSION**

For all the foregoing reasons, I respectfully recommend that Petitioner's petition for writ of habeas corpus be **DENIED**.


Therefore, I respectfully make the following:

## R E C O M M E N D A T I O N

AND NOW, this __30TH__ day of January, 2013, IT IS RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be DENIED.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule

72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE